UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED FINANCIAL CASUALTY COMPANY,     CIVIL NO. 15-3640 (MJD/JSM)
*d/b/a Progressive Insurance Company*,

    Plaintiff,

v.                                     REPORT AND RECOMMENDATION

KILIMANJARO, LLC,
ROBERT MABEYA,
ELIJAH OMWENO,
THOMAS P. VELURE and
ANTONIA F. VELURE,
*Representatives of the
Estate of Joel Kasper Velure,*

    Defendants.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came before the undersigned United States Magistrate Judge upon Motion of Defendants Thomas P. Velure and Antonia F. Velure for Abstention and Dismissal [Docket No. 19]. Stephen M. Warner, Esq. appeared on behalf of plaintiff. Brian F. Laule, Esq. appeared on behalf of defendant.

The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.     FACTUAL BACKGROUND

### A.     Progressive's Complaint

On September 10, 2015, plaintiff United Financial Casualty Company ("Progressive") filed a Declaratory Judgment Complaint [Docket No. 1] against

defendants Kilimanjaro, LLC, Robert Mabeya, Elijah Omweno, Thomas P. Velure and Antonia F. Velure, alleging the following facts.

Progressive is an Ohio corporation with its principal place of business in Cleveland, Ohio. Id., ¶ 2. Defendant Mabeya is a resident of Lakeville, Minnesota. Id., ¶ 3. Defendant Omweno is a resident of Menomonie, Wisconsin. Id., ¶ 4. Defendant Kilimanjaro, LLC ("Kilimanjaro") is a Minnesota partnership conducting business in Minnesota, with a registered office in Lakeville, Minnesota. Id., ¶ 5. Defendants Thomas Velure and Antonia Velure (collectively, "the Velures") are residents of River Falls, Wisconsin. Id., ¶ 6.

On May 18, 2013, Joel Velure attended a bachelor party on board a 1992 International party bus (the "Bus") owned by Kilimanjaro. Id., ¶ 12. Joel Velure died from injuries sustained when he fell out of the rear exit door of the Bus in Ellsworth, Wisconsin. Id. Following the accident, the estate of Joel Velure brought a claim against Kilimanjaro. Id., ¶ 13.

Vehicle records reflected that the Bus was formerly a school bus owned by Independent School District 71 located in Virginia, Minnesota and was converted to a party bus. Id., ¶¶ 15, 16. On September 30, 2004, title to the Bus was transferred to Bethany Russian Baptist. Id., ¶ 16. Omweno purchased the Bus on December 7, 2010, and on March 4, 2011, Omweno leased the vehicle to Kilimanjaro, LLC located in Menomonie, Wisconsin. Id. Kilimanjaro was then listed as the registrant of the Bus. Id.

In 2011, Progressive issued a Commercial Auto Policy ("Policy") to Kilimanjaro LLC, located in Lakeville, Minnesota.[1] Id., ¶ 17. The Policy also named Kilimanjaro LLC of Menomonie, Wisconsin as an additional insured party. Id. The Policy insured three 12-passenger-wheelchair-accessible vans and listed Mabeya and Omweno as rated drivers. Id.

It was represented to Progressive that Kilimanjaro was not going to use the vans "for hire," but rather, it was going to use them to transport residents from a group home facility that it operated. Id., ¶ 18. Progressive's underwriting department had rated Kilimanjaro for "Airport & Hotel Shuttle Services Passenger Transportation (not for hire)," which is defined as:

> Business earns income through a service to their customers. Passengers are transported as a courtesy and are incidental to the way the business earns a profit. Transportation of passengers is not done on a for-hire basis. Unacceptable risks include taxicabs, transportation of prisoners or reform school students, transporting of children between home and school, and all for-hire livery/passenger risks.

Id., ¶ 19.

On April 23, 2013, a Progressive agent spoke with Omweno who confirmed he owned a group home and a taxi company. Id., ¶ 20. When Omweno refused to verify the name of the group home, Progressive informed him that it was setting the Policy for nonrenewal as of January 3, 2014. Id. After the accident, Progressive cancelled the policy effective July 25, 2013. Id., ¶ 21.

At some point following the accident, Omweno represented to Progressive that the Bus was insured on another policy and with American Family Insurance Company

---

[1] According to the Complaint, this address is a residential address owned by Mabeya. Id., ¶ 17 n.1.

through an Ellsworth, Wisconsin agent. Id., ¶ 26. At the time of the accident, the Bus was not listed as an insured vehicle on the Policy with Progressive. Id., ¶ 27.

The Policy issued to Kilimanjaro, with a policy period of January 3, 2013 to January 3, 2014, provided a combined single limit of $1,000,000 in coverage for "Liability To Others – Bodily Injury and Property Damage Liability." Id., ¶¶ 28, 29 (citing id., Exhibit A (Commercial Auto Insurance Coverage Summary)). Only three vans were listed on the policy. Id., ¶ 30. One of general provisions of the Policy provided that Progressive could void the policy at any time if at the time of application, Kilimanjaro made any incorrect statements or representations regarding any material fact or circumstance, concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct. Id., ¶ 31. Progressive has denied insurance coverage to Kilimanjaro because the Bus was not insured under the Policy. Id., ¶ 36.

Progressive sought a declaratory judgment that it had no duty to defend or indemnify Kilimanjaro, Mabeya or Omweno against claims asserted by Joel Velure's estate. Id., ¶¶ 38-40. Additionally, Progressive sought to rescind and cancel the Policy based on the material misrepresentations by Kilimanjaro that it was not going to use its vehicles for hire and that it only used the vehicles for transporting residents to and from a group home facility. Id., ¶¶ 42-50.

On October 20, 2015, a complaint was filed in Pierce County, Wisconsin by the Estate of Joel Velure, Thomas Palmer Velure Sr. and Antonia Faye Velure (the "State Action"). Affidavit of Brian F. Laule in Support of Defendants' Motion for Abstention and Dismissal ("Laule Aff."), Ex. C (Complaint filed in Pierce County Circuit Court Case No. 15-CV-199) ("State Complaint"), ¶¶ 1, 2 [Docket No. 22]. Relevant to the instant matter,

4

the State Complaint named as defendants Meshack Siro,[2] Elijah Omweno, Megena SMV Transport and Taxi Services LLC f/k/a Kilimanjaro Taxi Cab Services LLC ("Megena"),[3] Kilimanjaro LLC located in Menomonie, Wisconsin, Progressive, Viking Insurance Company of Wisconsin, Health Partners, and several unnamed insurers. Id., ¶¶ 3-15. The State Complaint alleged that on May 13, 2013, Joel Velure was injured in a motor vehicle accident and died as result of his injuries. Id., ¶¶ 16, 18, 20, 22. Joel Velure's injuries were caused by the negligence of Megena and Kilimanjaro LLC by and through their employee, Siro, while in the scope of his employment. Id., ¶¶ 16, 20.

On November 25, 2015, defendants Siro, Omweno, Kilimanjaro and Progressive filed a Joint and Separate Answer to the State Complaint, in which they admitted that Progressive had provided liability insurance coverage to Kilimanjaro, but alleged that the insurance policy "was subject to the terms, conditions and limitations set forth therein, including a limitation as to the amount recoverable for injuries or death of one person, and all persons arising out of the same accident or occurrence." Laule Aff., Ex. F, ¶ 2 (Joint and Separate Answer filed in Pierce County Circuit Court Case No. 15-CV-199).

On February 8, 2016, defendant Megena filed an amended answer to the State Complaint, in which it alleged that on May 18, 2013, American Country Insurance Company had in force a commercial automobile insurance policy identifying Kilimanjaro

---

[2] According to a report from the Ellsworth Police Department, Meshack Siro was the driver of the Bus at the time of the accident. Laule Aff., Ex. E (Ellsworth Police Department report in case no. 2013-01196). The bus was registered to Omweno. Id.

[3] In the Complaint, Progressive alleged that Wisconsin's business filings showed a Kilimanjaro Taxi Cab Services L.L.C., registered in 2008, with Omweno as the registered agent. Complaint, ¶ 22. On June 10, 2013, following the accident, the company changed its name to Megena SMV transport and Taxi Services LLC. Id.

Taxi Cab LLC of Menomonie, Wisconsin as the name insured. Id., Ex. G (Amended Answer filed in Pierce County Circuit Court Case No. 15-CV-199), ¶ 3. As a result of the amended answer, the State Complaint is currently being amended to include American Country Insurance Company as a defendant. Id., ¶ 9.

On January 13, 2016, defendants' counsel agreed to sign a stipulation to amend the instant Complaint to allow Progressive to add Siro as a defendant in the present litigation. Affidavit of Stephen M. Warner ("Warner Aff."), Ex. 4 (email correspondence between Stephen Warner and Brian Laule dated January 4, January 12, and January 13, 2016) [Docket No. 27-4].

### B. Kilimanjaro's Motion to Dismiss

On February 19, 2016, the Velures filed the instant motion to dismiss the Complaint or, in the alternative, to stay the instant action pending resolution of the State Action. In support of its motion, Kilimanjaro argued that this Court should abstain from exercising federal jurisdiction pursuant to the principles enunciated in Wilton v. Seven Falls Co., 515 U.S. 277 (1995) and Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942). Brief in Support of Motion of Defendants Thomas P. Velure and Antonia F. Velure for Abstention and Dismissal ("Velures' Mem."), pp. 2, 5-10 [Docket No. 21]. According to the Velures, Wilton-Brillhart abstention is appropriate where the State Action involves the same legal issues and parties as the instant federal action. Id., pp. 10-12. Specifically, the Velures maintained that the State Action and the instant lawsuit are "parallel" because the State Action involves all of the necessary parties present in the instant lawsuit including Progressive, Kilimanjaro, Omweno and Siro. Id., p. 10. Although the State Action does not involve Mabeya, the issue of insurance coverage

6

would not change depending on whether Mabeya was or was not a party because his role was limited to being an additional "Rated Driver" under the Policy issued to Kilimanjaro. Id. (citing Laule Aff., Ex. B (Progressive insurance policy no. 07777920-2 issued to Kilimanjaro, LLC)).

The Velures contended that the claims raised in the instant suit would be resolved in their entirety by the State Action, as coverage by Progressive for the actions of Kilimanjaro and its employees has been alleged in the state court case. Id., p. 11. Further, in the State Action, Progressive has raised the same exclusions and defenses regarding coverage as in the instant suit. Id., pp. 11-12 (citing Laule Aff., Ex. F (Joint and Separate Answer filed in Pierce County Circuit Court Case No. 11-CV-427), ¶ 2. Additionally, none of Progressive's claims involves matters of federal law, and the state court has the interest in resolving issues related to a death occurring within its jurisdiction. Id., p. 13.

The Velures also submitted that abstaining and permitting the State Action to resolve all of the issues in this matter would avoid inconsistent, piecemeal and potentially unfair rulings. Id., pp. 14-15. The Velures noted that the state lawsuit involves additional parties not named in the instant Complaint, such as Viking Insurance Company and American Country Insurance. Id., p. 14. Moreover, because the State Action involves issues not raised in the present litigation, the State Action will move forward regardless of whether this Court makes any rulings on the issue of insurance coverage. Id., p. 15.

The Velures urged that parallel proceedings are evaluated at the time of the motion to dismiss or stay the federal action; thus, it does not matter which action—state or federal—was filed first. Id., p. 16.

Lastly, the Velures argued that a dismissal of the instant suit is preferable to a stay because there is no risk that the state court will not fully resolve the issues raised in this case. Id., pp. 16-17.

Progressive responded that this Court should exercise jurisdiction over this matter pursuant to the "first-filed" rule set forth in Northwest Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1005 (8th Cir. 1993). Memorandum in Opposition to the Motion to Dismiss of Defendants Velure ("Pl.'s Mem."), pp. 3-5 [Docket No. 26]. According to Progressive, Kilimanjaro never provided notice of an intention to commence a lawsuit, and therefore, there is no evidence that Progressive initiated the instant action as a "preemptive strike" to forestall a lawsuit by Kilimanjaro. Id., p. 4. Further, this case was properly filed in this District because Kilimanjaro is a Minnesota resident and Minnesota law will govern the interpretation of the Policy, regardless of the forum. Id.

Progressive also asserted that this Court is a better forum for deciding the issues in controversy because the interpretation of the Policy will be governed by Minnesota law, the Policy was executed and negotiated in Minnesota, the Policy was placed through the "Preferred Choice Agency" located in Minnesota, and the Policy was delivered to Kilimanjaro at its address in Lakeville, Minnesota. Id., pp. 5-8.

Progressive contended that the Wilton-Brillhart abstention doctrine is not the proper framework to analyze the Velures' motion because, in addition to a claim for a declaratory judgment, Progressive has asserted a cause of action for rescission of the

Policy. Thus, the instant motion is properly decided under the abstention doctrine set forth in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). Id., pp. 8-9. Under that doctrine, no exceptional circumstances warrant abstention by this Court, as the Wisconsin state court has exercised jurisdiction over the wrongful death action; this Court is not an inconvenient forum for either party; there is no risk of piecemeal litigation because the wrongful death claim would likely be stayed pending resolution of the insurance coverage issues; the instant action was filed first; neither the instant action nor the state court action involves questions of federal law; and this Court can more aptly interpret insurance policies under Minnesota law. Id., pp. 10-12.

Finally, Progressive submitted that its rescission claim is completely independent of the claim for declaratory judgment. Id., p. 13. While the declaratory judgment claim seeks a declaration of the rights and obligations of the parties under the Policy as written, the claim for rescission is a claim in equity and is not dependent on an interpretation of the Policy. Id., pp. 13-14 (citing Nadeau v. County of Ramsey, 288 N.W.2d 520, 524 (Minn. 1979)). As such, a judgment on Progressive's rescission claim would not be "further necessary or proper relief" under the Declaratory Judgment Act. Id., p. 14.

In reply, the Velures argued that the first-filed rule did not apply here because that rule was designed to address the issue of primacy for claims pending in two separate federal district courts. Reply Brief of Defendants Thomas P. Velure and Antonia F. Velure in Support of Motion for Abstention and Dismissal ("Velures' Reply"), p. 2 [Docket No. 28]. In the Velures' view, the first-filed rule is not the appropriate

standard because the instant action seeks a declaratory judgment and was commenced specifically to preempt the state court action. Id., pp. 2-3.

The Velures additionally maintained that the "essence of the claims" at issue here is one for a declaratory judgment, which implicates Wilton-Brillhart analysis, and not Colorado River. Id., p. 4 (citing Royal Indem. Co. v. Apex Oil Co., 511 F.3d 788, 791, 794 (8th Cir. 2008)). However, even if Colorado River analysis applied in this case, exceptional circumstances exist to warrant abstention because the state court has jurisdiction over the wrongful death action, there is a real danger of piecemeal litigation because Viking Insurance Company and American Country Insurance are not parties to the instant federal action, there is no issue of federal law raised by this case, and the state court is an adequate forum to adjudicate the issues of wrongful death and insurance coverage. Id., pp. 5-6.

## II.    DISCUSSION

### A.    Abstention Doctrine

"'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" Royal Indem., 511 F.3d at 792 (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 (1959)). "[F]ederal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them,' which 'does not evaporate simply because there is a pending state court action involving the same subject matter.'" Spectra Commc'ns Grp., LLC v. City of Cameron, Mo., 806 F.3d 1113, 1121 (8th Cir. 2015) (internal citation omitted) (citing Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc., 48 F.3d 294,

297 (8th Cir. 1995)); see also Mata v. Lynch, 135 S. Ct. 2150, 2156 (2015) ("And when a federal court has jurisdiction, it also has a 'virtually unflagging obligation … to exercise' that authority.") (quoting Colorado River, 424 U.S. at 817).  "Thus, a federal court may divest itself of jurisdiction by abstaining only when parallel state and federal actions exist and exceptional circumstances warrant abstention."  Fru-Con Const. Corp. v. Controlled Air, Inc., 574 F.3d 527, 534 (8th Cir. 2009) (citing Colorado River, 424 U.S. at 817-18).

The determination of whether suits are parallel is a threshold matter for identifying the extent of a federal court's discretion to grant a stay.  Lexington Ins. Co. v. Integrity Land Title Co., 721 F.3d 958, 968 (8th Cir. 2013).  "[S]tate and federal proceedings are parallel for purposes of Colorado River abstention when substantially similar parties are litigating substantially similar issues in both state and federal court."  Fru-Con, 574 F.3d at 535 (emphasis in original).  "The pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient."  Id. (citation omitted).  "Rather, a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court."  Id. (citing TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005)).  A federal court must exercise jurisdiction if there is any doubt as to the parallel nature of the state and federal proceedings.  Id. (citation omitted).

Whether exceptional circumstances warrant abstention depends on the following six non-exhaustive factors:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal

> forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

Id. (quoting Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d 920, 926 (8th Cir. 2006).

Additionally, federal courts have more discretion to abstain in an action where a party seeks relief under the Declaratory Judgment Act. Royal Indem., 511 F.3d at 792 (citations omitted); see also Lexington Ins., 721 F.3d at 967 ("This general rule, however, yields to practical considerations and substantial discretion when the federal complaint seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).") (citing Wilton, 515 U.S. at 282). "This broader discretion arises out of the Declaratory Judgment Act's language that a court 'may declare the rights and other legal relations of any interested party seeking such declaration.'" Royal Indem., 511 F.3d at 792 (citing 28 U.S.C. § 2201(a)).

> According to Brillhart, for a district court to have discretion to abstain in a proceeding under the Declaratory Judgment Act, the parallel state court proceeding must present "the same issues, not governed by federal law, between the same parties," and the court must evaluate "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." Brillhart, 316 U.S. at 495, 62 S.Ct. 1173. After considering these factors, a federal court may abstain from the proceeding because "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where" a parallel state court proceeding is pending. Id.

Id. at 793.

## B. Effect of Non-Declaratory Claims

Because Progressive has asserted a claim for rescission of the Policy in addition to its claim for declaratory relief, the Court must first determine whether the instant case is properly analyzed under the Wilton-Brillhart framework. When a plaintiff seeks both declaratory and non-declaratory relief, the Eighth Circuit applies the "essence-of-the-lawsuit" approach set forth in Royal Indemnity. Under that approach, "[a] court has discretion to grant further necessary or proper relief in declaratory judgment actions; consequently, a court may still abstain in a case in which a party seeks damages as well as a declaratory judgment so long as the further necessary or proper relief would be based on the court's decree so that the essence of the suit remains a declaratory judgment action." Id. at 793-94 (citing Horne v. Firemen's Ret. Sys. Of St. Louis, 69 F.3d 233, 236 (8th Cir. 1995)).

Royal Indemnity is instructive. In that case, between May and April, 2005, five lawsuits were filed against defendant Apex Oil Company stemming from Apex's release of contaminants into the soil surrounding its oil refinery in Hartford, Illinois. Id. at 791. Plaintiff Royal Indemnity Company defended Apex in the majority of these actions. Id. On August 5, 2005, Apex brought suit against several insurers in Madison County, Illinois, seeking a declaration of the parties' rights and responsibilities under insurance policies issued to Apex with respect to the Hartford soil contamination. Id.

On March 22, 2006, Royal filed a complaint against Apex in federal court pursuant to the Declaratory Judgment Act. Id. In the complaint, Royal sought a declaration of the rights and responsibilities of the parties under insurance policies

Royal had issued to Apex. Id. Royal also asserted claims of equitable contribution, subrogation, unjust enrichment and equitable estoppel for costs Royal incurred while defending Apex. Id.

On May 19, 2006, Apex amended its complaint in the state court action to name as defendants the same entities who were parties to Royal's federal court lawsuit. Id. at 791-92. Subsequently, Apex filed a motion to dismiss the federal action as duplicative of the Illinois lawsuit. Id. at 792. The district court granted the motion and dismissed all claims without prejudice under the Wilton-Brillhart abstention doctrine. Id.

Royal appealed the dismissal to the Eighth Circuit, arguing that the district court had erred in applying the Wilton-Brillhart abstention test and instead should have applied the "exceptional circumstances" test articulated in Colorado River because its claims for contribution, subrogation, unjust enrichment and equitable estoppel were independent from its claims for declaratory relief. Id. The Eighth Circuit held that the mere fact that Royal sought monetary damages in addition to declaratory relief did not require a federal court automatically to apply the exceptional circumstances doctrine. Id. at 793. The court explained that Royal's claims for damages could be characterized as "further necessary and proper relief" based on its claim for a declaratory judgment; thus, the damages were not independent of the request for declaratory judgment. Id. at 794. The court noted that if Royal's claims under the Declaratory Judgment Act were rejected, it could not recover on its claims for contribution, subrogation, unjust enrichment and equitable estoppel. Id. Accordingly, the court concluded that the essence of Royal's lawsuit was one for declaratory judgment and affirmed the district court's application of Wilton-Brillhart abstention analysis. Id. at 794, 796.

The Eighth Circuit also found that the district court did not abuse its discretion in concluding that abstention was appropriate under <u>Wilton</u>-<u>Brillhart</u>. The appellate court reasoned that the Illinois and federal lawsuits both sought a declaration of the rights and responsibilities of the parties under the insurance policies held by Apex, the issues to be resolved in both cases involved the application of state insurance law, and the parties to each lawsuit were the same. <u>Id.</u> at 796. Thus, the court concluded that the district court did not abuse its discretion in abstaining from Royal's federal lawsuit to allow the parallel Illinois action to proceed. <u>Id.</u> at 797.

Turning to the instant case and the Velures' motion, the Court does not find that the essence of this lawsuit is a declaratory judgment action. This is because Progressive's claim for rescission of the Policy is independent of its request for a declaratory judgment. In its Complaint, Progressive sought declaratory relief based on its allegation that the Bus was not scheduled as an insured vehicle on the Policy. <u>See</u> Complaint, ¶ 27. On the other hand, Progressive's rescission claim is based on its theory that Kilimanjaro made material misrepresentations on its application for insurance coverage. <u>See</u> <u>id.</u>, ¶¶ 42-50. Thus, even if this Court were to find that the Bus was covered under the Policy at the time of the incident, Progressive could still prevail on its rescission claim by proving that Kilimanjaro materially misrepresented information on its insurance application. As such, the rescission claim cannot be considered "further necessary and proper relief" under the Declaratory Judgment Act.

**C.** **Colorado River Abstention**

Because <u>Wilton</u>-<u>Brillhart</u> does not apply to the instant suit, the Court applies the <u>Colorado River</u> abstention doctrine to determine if the state and federal suits are parallel

and action and if there are "exceptional circumstances" sufficient to overcome the general presumption of federal jurisdiction.[4]

"The threshold question is whether the state and federal proceedings are parallel." Cottrell v. Duke, 737 F.3d 1238, 1245 (8th Cir. 2013) (citation omitted). The Court finds that they are not. First, while there is overlap of the parties and issues in the state and federal suits, they are not identical. See Fru-Con, 574 F.3d at 535. In the instant suit, the parties are Progressive, Kilimanjaro, Mabeya, Omweno, the Velures, and presumably Siro, if the suit remains in federal court. On the other hand, the parties

---

[4] Progressive urged this Court to retain jurisdiction pursuant to the "first-filed" rule set forth in Northwest Airlines. In that case, the Eighth Circuit reaffirmed the "well-established rule . . . that in cases of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'" 989 F.2d at 1005 (citation omitted). However, unlike in the present case, Northwest Airlines involved the "discretionary power of the federal court in which the first-filed action is pending to enjoin the parties from proceeding with a later-filed action in another federal court . . . ." Id. at 1004 (emphasis added) (citations omitted). Thus, Northwest Airlines was

> a case about the administration of justice within the federal courts, not abstention from federal jurisdiction altogether. It involves one federal court's injunction of parties from litigating in other federal courts, not a federal court's abstention from exercising jurisdiction while another court hears the case. Indeed, the word "abstention" appears nowhere in the court's opinion in Northwest, and the Northwest court relied on the federal courts' "policy against multiplicity of litigation embodied in [Federal Rule of Procedure 13(a)]." [989 F.2d] at 1004 (alteration original). (quoting 6 Charles A. Wright, et al., Federal Practice and Procedure § 1418, at 145-46 (2d ed. 1990). Northwest is a case about the administration of the federal courts' docket, not about a federal court's ability to decline jurisdiction.

Progressive Preferred Ins. Co. v. Reagor, Civil No. 15-3272 (JRT/SER), 2016 WL 2886001, at *2 (D. Minn. May 17, 2016).

Accordingly, Northwest Airlines is inapposite to the instant case, and the Court rejects Progressive's argument that the first-filed rule should apply here.

in the State Action are Siro, Omweno, Megena, Kilimanjaro, Progressive, Viking Insurance Company of Wisconsin, Health Partners, American Family Insurance Company, and several unnamed insurers.

Second, while there is similarity of claims in both the state and federal suits, in addition to its claim for declaratory relief, Progressive is also seeking in the federal suit to rescind the Policy issued to Kilimanjaro based on alleged misrepresentations made by it in its application for coverage. That claim has not been made by Progressive in the State Action. The Velures' argument that the Joint and Separate Answer of Progressive to the State Complaint necessarily includes the claim that any misrepresentations by the insured would nullify coverage, ignores the substance of the Answer. See Velures' Mem., pp. 11-12. While it is true that the Joint Answer alleged that the insurance policy "was subject to the terms, conditions and limitations set forth therein," Progressive then qualified this response by stating that it included "a limitation as to the amount recoverable for injuries or death of one person, and all persons arising out of the same accident or occurrence." Laule Aff., Ex. F, ¶ 2. The Velures' theory that this response includes the defense of material misrepresentation and a claim for rescission is speculative at best, and does not satisfy this Court that there is "substantial likelihood" that the state proceeding would fully dispose of the claims presented in this Court. See Fru-Con, 574 F.3d at 535.

However, even if the Court found that the State Action was parallel to the instant suit, the Court finds that no exceptional circumstances are present in this case to warrant abstention.

With respect to the first and second factors set forth in Fru-Con, the parties agreed that the Pierce County Circuit Court has exercised jurisdiction over the Velures' wrongful death claim and that this District is not an inconvenient forum to determine the issue of insurance coverage under the Policy. Pl.'s Mem., p. 10; Velures' Reply, p. 5. These factors do not weigh in favor of abstention.

As to the third factor—the risk of piecemeal litigation—it is true that the State Action involves parties not named in the instant lawsuit, including Viking Insurance Company and American Country Insurance. These insurance providers could be impacted by a determination in this Court that the Bus was or was not covered under the Policy or by a cancellation of the Policy. Indeed, if it is found that there was no coverage under the Policy or that Progressive was entitled to rescind the Policy, the exposure of these other insurers could be increased. However, that is true regardless of whether the issue of coverage is decided in this Court or in the State Action. The critical fact is that interpretation of Progressive's insurance Policy, which is likely governed by Minnesota law, will not affect the interpretation of the other providers' policies. Nor will a ruling that Progressive is entitled to rescind the Policy have any bearing on the defenses raised by the other providers as to why they should not be required to provide coverage. Further, the determination of coverage under the Progressive's Policy would not require the appearance of the other insurers in this lawsuit. For all of these reasons, the third factor does not weigh in favor of abstention.

Turning to the fourth factor, both the State Action and the instant case are in the preliminary stages, with no significant discovery having been conducted in either case. This factor does not support abstention.

As to the fifth and sixth factors, no question of federal law has been raised in either the state or the present lawsuit, and both courts are adequately suited to address the issue of insurance coverage under the Policy. These factors do not support abstention.

In sum, having considered the Fru-Con factors, this Court finds no exceptional circumstances that would justify an abstention from the instant action.[5] Therefore, given the presumption that a federal court will exercise jurisdiction in matters properly before it, this Court concludes that abstention is not warranted under the Colorado River or Wilton-Brillhart doctrines.

### III.  RECOMMENDATION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that the

Motion of Defendants Thomas P. Velure and Antonia F. Velure for Abstention and Dismissal [Docket No. 19] be **DENIED**.


Dated:      July 13, 2016                         *s/ Janie S. Mayeron*
                                                  JANIE S. MAYERON
                                                  United States Magistrate Judge

---

[5] At the hearing, the Velures alleged that Progressive initiated this lawsuit for improper purposes such as forum shopping or as a preemptive strike against Kilimanjaro's claim for insurance coverage under the Policy. The Velures offered no factual evidence for this contention, other than the fact that Progressive initiated this action after the Velures asserted a claim against Kilimanjaro. However, contrary to the Velures' position, it makes perfect sense that upon receiving notice of the Velures' claim, Progressive would seek a determination of whether it owed any coverage to Kilimanjaro. Further, it was not improper for Progressive to commence a suit in Minnesota where its insured resided and the Policy was issued. In short, there is no support for the Velures' suggestion that Progressive initiated this lawsuit for any nefarious purpose.

## **NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 27, 2016**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.